IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 4:23-cr-00108-SMR-WPK-1 |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ON DEFENDANT'S MOTION |
| v. | ) | TO DISMISS |
| | ) | |
| KESHON DAVEON BAXTER, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Keshon Daveon Baxter was indicted by a grand jury on a charge of being an unlawful user in possession of a firearm. [ECF No. 22]. After appellate proceedings and remand, he has filed a renewed motion to dismiss his indictment. Baxter argues that Section 922(g)(3) is unconstitutional as applied to him under the Second Amendment as interpreted by the United States Supreme Court in *New York State Rifle & Pistol Association, Inc., v. Bruen*, 597 U.S. 1 (2022). [ECF No. 106]. The Court reserved ruling on Baxter's Motion to Dismiss pending his trial and a post-trial dangerousness hearing to determine the constitutionality of the statute as applied to his conduct. Baxter waived his right to a jury and proceeded to a bench trial on stipulated facts and evidence. The Court found him guilty, notwithstanding the constitutional challenge, concluding the Government had proven his guilt beyond a reasonable doubt. [ECF No. 105]. The Government then presented witnesses and evidence to establish that Section 922(g)(3) is constitutional as applied to Baxter. Baxter presented no evidence, and both parties submitted written closing arguments.

1

## I.    BACKGROUND

### A.    Procedural Background

In July 2023, a grand jury indicted Baxter on one charge of being an unlawful user in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(8). [ECF No. 22]. Baxter filed a motion to dismiss, arguing that Section 922(g)(3) is unconstitutional as applied to him and unconstitutionally vague. [ECF No. 27]. The Court denied his motion on both grounds. [ECF No. 45]. After the Court issued its ruling, Baxter pled guilty, expressly reserving his right to appeal the Court's denial of his Motion to Dismiss. His plea was accepted and he was sentenced to 64 months' imprisonment and three years of supervised release. [ECF No. 67]. Baxter then appealed, challenging the Court's ruling on his as-applied Second Amendment challenge and his void-for-vagueness argument.

The United States Court of Appeals for the Eighth Circuit affirmed in part and reversed and remanded in part. [ECF No. 80-1]. The panel held Section 922(g)(3) was not void for vagueness because Baxter could not demonstrate why it was unconstitutionally vague as applied to his conduct. *United States v. Baxter*, 127 F.4th 1087, 1092 (8th Cir. 2025). However, the court found the district court record insufficient for it to determine whether Section 922(g)(3) was constitutional as applied to Baxter's conduct under the Second Amendment.[1] *Id*. at 1089. The Eighth Circuit remanded with instructions for the Court to determine whether Baxter's Motion to Dismiss was appropriate for pretrial resolution under Rule 12 or whether the constitutional issue was "inevitably bound up with evidence about the alleged offense itself." *Id*. at 1090 (quoting *United States v. Turner*, 842 F.3d 602, 605 (8th Cir. 2016).

---

[1] The panel also rejected any facial Second Amendment challenge argued by Baxter pursuant to the holding in *United States v. Veasley*, 98 F.4th 906 (8th Cir. 2024). *Baxter*, 127 F.4th at 1089, n.1.

The Court concluded that the facts surrounding Baxter's status as an unlawful user and the constitutionality of Section 922(g)(3) as applied to his conduct were inevitably bound up with the evidence of the alleged offense.  Accordingly, the Court granted Baxter leave to withdraw his guilty plea, set the case for trial, and scheduled a post-trial dangerousness hearing to determine the constitutional question in the event Baxter was found guilty.  Baxter and the Government stipulated to the facts and exhibits for admission at trial and proceeded to a bench trial.  The Court convicted Baxter, notwithstanding his as-applied challenge, finding that the Government had proved Baxter's guilt beyond a reasonable doubt.  The Government then presented evidence and testimony to establish that Baxter is the type of unlawful user that the Second Amendment does not protect. The Court held the record open for Baxter to present any additional evidence.   A week later, Baxter notified the Court that he would not submit any evidence.  The record was then closed, and the parties filed their final arguments.   Baxter's Renewed Motion to Dismiss is now ripe for adjudication.

## B.    Factual Background[2]

On May 21, 2023, just after midnight, police officers in Des Moines, Iowa, were stationed in the Court Avenue entertainment district when they observed two groups of males arguing with one another and preparing to fight.  The groups included Baxter, a Strap Gang member, other individuals from Strap Gang, and individuals from the opposing gang C-Block.  Officers broke up the altercation, and the groups went in opposite directions.  Approximately 30 minutes later, officers observed the same two groups again preparing to fight.  As officers approached, the C-Block group ran while being pursued by the Strap Gang group, which included Baxter.  Officers

---

[2] This factual background is drawn from the facts stipulated to by the parties for the purposes of the trial and the constitutional analysis.

joined the pursuit. During the chase, a witness informed officers that a male (identified as Baxter) had a gun. Officers then approached Baxter and asked him what was in his pocket. Baxter replied, "nothing," but immediately began running from the officers. He was apprehended a short time later. Officers then searched Baxter's person. In one of his short's pockets, officers located a firearm—a Taurus, model PT749 Slim, .40 caliber pistol, with serial number SDX70551 ("Taurus pistol"). It was loaded with one bullet in the chamber and six in the magazine. In a different pocket, officers located a baggie of marijuana.

Following the May 21, 2023, incident, a federal warrant was obtained to seize and search Baxter's urine for the presence of controlled substances. Testing completed by the Iowa Department of Public Safety revealed that Baxter's urine contained metabolites of THC, consistent with the use of marijuana, which is a controlled substance under federal law.

Baxter began using marijuana at age 13. He smoked approximately one "blunt" of marijuana twice per week, a pattern of use that generally continued until his arrest precipitating this case. Baxter stipulated that he knew he was a marijuana user, as described above, and that marijuana use was unlawful.

Social media records document Baxter's possession of the Taurus pistol beginning at least as early as August 31, 2022, and continuing until at least approximately January 9, 2023. During this same time period, social media records document Baxter's regular use of marijuana. The Taurus pistol was not manufactured in Iowa. Thus, it necessarily crossed a state line before Baxter possessed it.

### C.    *Burden and Standard of Proof*

The Court inquired with the parties as to the burden of proof that applies to the Government in demonstrating that Section 922(g)(3), as applied to Baxter, comports with this Nation's

historical tradition of firearm regulation.  There was no clear consensus.  The Government contends that it only has the burden of demonstrating that the regulation is consistent with the Nation's tradition of firearm regulation.  It argues that the burden rests on Baxter to prove by at least a preponderance of the evidence, if not by clear and convincing evidence, that the statute is unconstitutional as applied to his conduct.  Baxter suggests that the Government bears the burden of proving that the statute is constitutional as applied to him beyond a reasonable doubt, similar to the burden for proving the elements of a crime as required by due process.  The Court finds neither argument persuasive.

First it is clear that the burden, regardless of the standard of proof that applies, belongs to the Government.  When an individual's conduct is covered by the plain text of the Second Amendment, it is presumptively protected by the Constitution.  *Bruen,* 597 U.S. at 24.  The burden then falls to the Government to justify its regulation by demonstrating its consistency with the Nation's historical tradition of firearm regulation.  *Id.*  The Supreme Court emphasized this principle by explaining that the Government bears the burden of proving the constitutionality of its actions when it burdens other constitutional rights, such as free speech under the First Amendment.  *Id.*  In applying *Bruen*, the Eighth Circuit has consistently enforced this burden.  *See United States v. Sitladeen*, 64 F.4th 978, 985 (8th Cir. 2023) (requiring the Government to identify a relevantly similar historical regulation); *see also Worth v. Jacobson*, 108 F.4th 677, 688 (8th Cir. 2024) ("[W]hen the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to justify its regulation.") (cleaned up) (quoting *United States v. Rahimi*, 602 U.S. 680, 691 (2024)).

The Government points to a post-*Bruen* case from the United States Court of Appeals for the Sixth Circuit, arguing that because the burden was placed on the defendant to prove he was not

dangerous in that case, Baxter should bear the same burden in the context of his Section 922(g)(3)

challenge.  *See United States v. Williams,* 113 F.4th 637, 662 (6th Cir. 2024).  However, the Sixth

Circuit explains precisely why that allocation would not apply to Baxter.  *Id*.  The panel reasoned

that:

> Our nation's history shows that the government may require
> individuals in a disarmed class to prove they aren't dangerous in
> order to regain their right to possess arms. Thus, in an as-applied
> challenge to § 922(g)(1), the burden rests on [the defendant] to show
> he's not dangerous.

*Id.*  The Eighth Circuit has held that Section 922(g)(3) is not like Section 922(g)(1) for the purposes

of Second Amendment challenges.  Specifically, unlike Section 922(g)(1), which has a historical

analogue for disarming a *class* of people, Section 922(g)(3) does not.  *See United States v. Cooper,*

127 F.4th 1092, 1096 (8th Cir. 2025) ("Nothing in our tradition allows disarmament simply

because [the defendant] belongs to a category of people, drug users, that Congress has categorically

deemed dangerous.")  Both historical analogues identified in *Veasley* and argued by the

Government require an individualized assessment of the facts because "[s]ometimes disarming

drug users and addicts will line up with the case-by-case historical tradition, but other times it will

not."  *Id*. at 1097.  Accordingly, the Government may not shift its burden to Baxter in this context.

Although Baxter correctly places the burden with the Government, the standard of proof is

not proof beyond a reasonable doubt.  The requirement under due process that the Government

prove every fact necessary for the charged crime beyond a reasonable doubt does not extend to

Baxter's as-applied challenge.  Whether Baxter is the type of drug user who is dangerous or

threatening such that application of the statute comports with the historical analogue is not an

element of the crime.  *See In re Winship*, 397 U.S. 358, 364 (1970) (holding that due process

requires proof beyond a reasonable doubt of every fact necessary to constitute the charged crime)

Further, it is not a determination which increases the minimum or maximum penalty for the crime. *See Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000); *see also Alleyne v. United States*, 570 U.S. 99, 116 (2013).

The Due Process Clause does not require the constitutionality of governmental action to be proven beyond a reasonable doubt every time it burdens a fundamental right. *See United States v. Taylor,* Case No. 4:20-CR-058 SEP/NAB, 2022 WL 3636860, at *10 (E.D. Mo. June 14, 2022) (noting that warrantless searches must be justified by a preponderance of the evidence) (citing *United States v. Hughes*, 517 F.3d 1013, 1019 (8th Cir. 2008)); *see also United States v. Bey*, 911 F.3d 139, 145 (3d Cir. 2018) (requiring the preponderance standard for *Terry* stops). Baxter has the right to challenge Section 922(g)(3) as unconstitutional, but such a challenge does not transmute the statutory elements of the offense.

The test identified in *Bruen* is two-fold, based on "text and historical understanding." *Veasley*, 98 F.4th at 909 (quoting *Bruen,* 597 U.S. at 26). Step one asks: does the law prohibit conduct covered by the plain text of the Second Amendment? If so, step two requires that "the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. (cleaned up) (quoting *Bruen*, 597 U.S. at 27).

In answering the first question, district courts within the Third Circuit and Seventh Circuit have consistently held that the defendant bears the burden of proving that their conduct falls within the scope of the Second Amendment by a preponderance of the evidence. *United States v. Diaz-Rojas*, Criminal No. 22-CR-650 (KMW), 2025 WL 1202013, at *8 (D. N.J. Apr. 25, 2025) (citing *Binderup v. Att'y Gen*., 836 F.3d 336, 356 (3d Cir. 2016) (en banc), *abrogated on other grounds by Bruen*, 597 U.S. 1; *United States v. Rogers*, Crim. Action No. 23-582 (SDW), 2024 WL 2844545, at *7 (D. N.J. June 5, 2024) (requiring preponderance showing for lawful carry); *Barnett*

*v. Raoul*, Case No. 3:23-cv-141-SPM, 2024 WL 756161, at *3 (S.D. Ill. Feb. 23, 2024) (citing *Bevis v. City of Naperville, Illinois*, 85 F.4th 1175, 1194 (7th Cir. 2023)); *United States v. Jenkins*, 697 F. Supp. 3d 380, 387 (E.D. Pa. 2023) (noting that *Bruen* places burden of production on Government only at step two).

Although the Eighth Circuit has not established such a standard for Section 922(g)(3), this approach is instructive. *See Veasley*, 98 F.4th at 910 (recognizing that 922(g)(3) covers conduct within the plain text of the Second Amendment because drug users are part of "the people" and handguns are weapons in common use). These cases suggest that factual determinations relating to the Second Amendment analysis should be proven by a preponderance of the evidence, regardless of which party holds the burden of proof at a particular step. The Court sees no reason to hold the Government to a higher standard in establishing the facts necessary to demonstrate a historical analogue than it would a defendant demonstrating that his conduct falls under the plain text of the Second Amendment. Moreover, this standard aligns with the burden imposed for other constitutional challenges. *See Sasser v. Payne,* 999 F.3d 609, 616 (8th Cir. 2021) (applying preponderance standard to Eighth Amendment intellectual disability claims).

For these reasons, the proper standard for the Court to employ in making its essential findings is preponderance of the evidence. However, even applying the clear and convincing standard, the Court makes the following essential findings based on the record in Baxter's trial and post-trial dangerousness hearing.

### D. Essential Findings

Beyond the stipulated facts, the Government presented substantial evidence at the dangerousness hearing that proves essential to determining Section 922(g)(3)'s constitutionality as applied to Baxter's conduct. The evidence included nearly 80 videos and photos from Baxter's

social media accounts documenting his marijuana use, firearm possession, and gang activities from April 2022 to January 2023. Baxter's Snapchat account name was "GlockboyKB5", which he used to create content documenting his criminal conduct. These self-recorded videos and photographs paint a fulsome picture of extensive and consistent marijuana use far exceeding his stipulated admissions. Although Baxter acknowledged smoking one marijuana blunt twice weekly, the evidence establishes significantly greater use. The photographs and videos display quantities of marijuana substantially exceeding what would be consumed at his admitted rate. Moreover, the videos themselves document more frequent use than Baxter admits. [ECF Nos. 114-47–114-50, 114-77–114-81, 114-82–114-87]. As Detective Jeffrey George testified, Baxter's social media activity is more consistent with daily use than twice a week.

Beyond the frequency of Baxter's marijuana use, the evidence reveals a concerning pattern linking drug use with firearm possession and gang activity. Multiple photographs and videos show Baxter simultaneously possessing firearms and displaying marijuana or marijuana use. [ECF Nos. 114-73–114-74, 114-77]. Others document marijuana use and firearm possession occurring on the same day. [ECF Nos. 114-48, 114-53, 114-100, 114-101, 114-114–114-118, 114-122–114-23, 114-127–114-29, 114-132–114-34, 114-135–114-38]. The Government's trial brief catalog succinctly demonstrates the substantial temporal overlap between Baxter's documented marijuana use and firearm possession. [ECF No. 96]. Significantly, Baxter never appears to handle firearms safely or for any lawful purpose.[3] He repeatedly brandishes weapons recklessly—waiving them around, pointing them at the camera, or aiming them in the direction of others. [ECF Nos. 114-102, 114-107–114-08, 114-110–114-11, 114-118, 114-121, 114-122, 114-126, 114-129, 114-131,

---

[3] Contrary to Baxter's contentions, Detective George's testimony and the substantial volume of Snapchat content establish that Baxter shared at least some of this material with third parties or posted it for third-party viewing.

114-136, 114-138, 114-140, 114-141, 114-142, 114-144, 114-149].   The evidence establishes Baxter's frequent possession of firearms with automatic switches—converting them to machine guns—and assault rifles. [ECF Nos. 114-130–114-32, 114-135–114-37, 114-140, 114-141]. One particularly startling video shows Baxter hanging out the window of a moving vehicle, gripping an assault rifle in one hand and his phone in the other while repeating the word "gang." [ECF No. 114-143]. Several videos capture him rapping threatening lyrics, talking about shooting people, or displaying gang signs, while brandishing firearms. [ECF Nos. 114-103, 114-117, 114-118, 114-128].

The evidence establishing Baxter's involvement in gang activities and shootings proves equally concerning. Notwithstanding Baxter's contrary assertions, the Government presented substantial evidence documenting a pattern of violent and reckless conduct spanning from his arrest back to age twelve. This history includes incidents in which Baxter threatened to shoot individuals, assaulted other children, brought a BB gun to school and shot another student, menaced his mother with a knife, stole vehicles, and led police on a high-speed chase. While the Court recognizes that many of these incidents occurred eight years prior and involve uncharged conduct, they establish a consistent pattern of dangerous and erratic behavior that coincided with Baxter's regular marijuana use from an early age. These were not isolated incidents removed in time. Rather, they mark the beginning of an escalating trajectory in which Baxter's dangerous conduct increased substantially—driven largely by his gang associations and activities.

The Government presented compelling evidence that by the age of sixteen, Baxter was actively involved in the Strap Gang in Des Moines. Based on the police reports, Baxter's self-documented associations, and the testimony of Detective George, the Court finds that Baxter is a member of the Strap Gang and has been involved in gang related activities since at least March

2021. The evidence presented demonstrates Baxter's consistent presence with other gang members while possessing firearms and using marijuana. [ECF Nos. 114-13, 114-15, 114-17, 114-65–114-68, 114-105]. Most disturbing, however, is the evidence linking firearms in Baxter's possession—and Baxter himself—to multiple gang-related shootings throughout the Des Moines area. [ECF Nos. 114-14, 114-16, 114-17, 114-73, 114-74, 114-75].

While gang members commonly share firearms for their criminal enterprises, Baxter's social media documentation provides significant insight into this practice. The evidence establishes that at least one firearm used in a gang shooting was in Baxter's possession in close temporal proximity to the incident. On August 30, 2022, the Taurus pistol—the same weapon later found in Baxter's possession when he was arrested on his Section 922(g)(3) charge—was used in a drive-by shooting in Des Moines. [ECF Nos. 114-16, 114-30]. Although this shooting occurred nearly a year before the firearm was discovered in his possession, Baxter photographed the Taurus pistol alongside several other firearms and marijuana on August 31, 2022. *Id*. 114-73–75. The same Taurus pistol was used in rolling gun battle approximately a month and a half before it was recovered from Baxter in May 2023. [ECF No. 114-18].

This pattern of escalating violence culminated in Baxter's conduct on the night of May 20, 2023, when officers arrested him for possessing marijuana and the Taurus pistol, leading to the current Section 922(g)(3) charge. The body camera footage of the officers responding that night provides a clear picture of the environment in downtown Des Moines and the unfolding events. It was a busy Saturday night with hundreds of people coming and going from the bars and restaurants on Court Avenue. The footage shows Baxter behaving aggressively in this crowded public setting—both in the street and on surrounding sidewalks. Accompanied by fellow gang members, Baxter twice engaged in altercations with other individuals while displaying or otherwise

indicating his firearm possession to bystanders, prompting one concerned citizen to alert police. The witness explained that he observed the altercation between the two groups and noticed Baxter gripping a firearm through his clothing while walking backward in a manner consistent with armed carry. [ECF No. 114-41]. Sufficiently alarmed by what he witnessed, the bystander approached officers to report his observations. [ECF No. 114-42]. The bystander later explained to officers that he suspected Baxter may have had a gun and felt compelled to report it to make sure no one got hurt. [ECF No. 114-43].

When officers approached Baxter to inquire about the contents of his pocket, he took off running and ignored their commands to stop, resulting in a foot chase. *Id.* Upon apprehension and detention, Baxter began behaving erratically, screaming complaints about his handcuffs and officers' restraint. [ECF No. 114-40]. He became increasingly agitated with officers as they attempted to secure him in the police car. *Id.* This behavior escalated until he was shouting belligerently at officers, disobeying commands, and physically resisting. *Id.* Once placed in the vehicle, he repeatedly shouted "it's tobacco," referring to the marijuana that officers had discovered in his pocket. *Id.* Baxter refused to give officers his name and claimed to be suffering a panic attack. [ECF No. 114-45].

## II.    DISCUSSION

### A.  Legal Standard

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The contours of that right have been shaped and clarified throughout our Nation's history. In *District of Columbia v. Heller*, the Supreme Court determined that the Second Amendment protects an individual's right to keep and bear arms for self-defense, holding that the

District's "total ban on handguns" violated that right.  554 U.S. 570, 576 (2008).  Two years later, the Supreme Court incorporated the Second Amendment against the states.  *See McDonald v. City of Chicago*, 561 U.S. 742 (2010).  At that time, it was clear that the Second Amendment permitted "law-abiding, responsible citizens" to possess a firearm "in defense of hearth and home."  *Heller*, 554 U.S. at 635.

In *Bruen,* the Court expanded Second Amendment protections beyond the home to include firearms possessed outside the home for "ordinary self-defense needs."  597 U.S. at 71.  In reaching this conclusion, the Court adopted a new analytical framework for considering Second Amendment challenges.  *Id*. at 17.  Under *Bruen*, courts must determine whether the challenged regulation comports with the historical tradition of firearms regulation in the United States.  The inquiry is "rooted in the Second Amendment's text, as informed by history."  *Id*. at 19.  Accordingly, if the plain language of the Second Amendment covers the conduct at issue, that conduct receives presumptive constitutional protection.  The burden is on the Government to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."  *Id*.  However, the Government need not identify a historical twin, the imperative consideration is "whether the challenged regulation is consistent with the principles that underpin our regulatory tradition."  *Rahimi*, 602 U.S. at 692.

### B.  As-Applied Challenge to Section 922(g)(3)

#### 1.  Protection of Conduct

The *Bruen* analysis proceeds in two steps based on "text and historical understanding." *Veasley*, 98 F.4th at 909(quoting *Bruen,* 597 U.S. at 26).  First the Court must determine whether the challenged law prohibits conduct covered by the plain text of the Second Amendment.  If it does, the Government must then demonstrate that "the regulation is consistent with this Nation's

historical tradition of firearm regulation." *Id*. In *Veasley*, the Eighth Circuit resolved the initial inquiry regarding Section 922(g)(3), finding that the statute covers conduct within the Second Amendment's scope because "drug users are part of the people whom the Second Amendment protects, and handguns are weapons in common use today." *Id*. (citations omitted) (cleaned up). The Government does not contest that Section 922(g)(3) prohibits conduct covered by the Second Amendment. Because Baxter was an unlawful drug user in possession of a handgun, his conduct was clearly protected by the plain text of the Second Amendment.

## 2. Historical Analogue

In *Veasley* and *Cooper*, the Eighth Circuit conducted the historical analysis and concluded that the Government had identified two historical analogues for Section 922(g)(3). First, this Nation has a longstanding tradition of disarming individuals who are both mentally ill and dangerous, often through confinement or restraint. *Veasley*, 98 F.4th at 913–14. This analogue proves a viable analogy due to the behavioral overlap between drug users and the mentally ill. *Id*. at 912 (contrasting the effects of drug use— memory impairment, lack of control, and poor decision-making—with the symptoms of mental illness—deficient processing, memory, reasoning, problem-solving, and social cognition). Moreover, the underlying rationale for removing firearms from presumptively dangerous individuals aligns with Section 922(g)(3) "as applied to drug users and addicts who pose a danger to others." *Id*. at 916.

Second, there is a historical tradition of disarming those who terrorize or threaten others. *Cooper*, 127 F.4th at 1096. Historically, the possession of firearms accompanied by terrorizing behavior justified disarmament. *Veasley*, 98 F.4th at 917 (explaining that arming oneself with deadly weapons "for the purpose of an affray, and in such a manner as to strike terror to the people" violated the law) (quoting *O'Neill v. State*, 16 Ala. 65, 67 (1849)). Drug use can cause "terrifying

and dangerous behavior" analogous to conduct prohibited under historical "Terror of the People" offenses. *Id*. Accordingly, disarming drug users who terrorize others with firearms comports with the historical practice of temporarily depriving those who act unlawfully and dangerously of their arms. *Id*. This rationale extends equally to individuals who pose a credible threat to the physical safety of others. *Cooper*, 127 F.4th at 1096 (quoting *Rahimi*, 602 U.S. at 700).

The Government argues that Section 922(g)(3) is constitutional as applied to Baxter under both analogues. Specifically, the Government argues that Baxter's drug use rendered him similar to someone who is both mentally ill and dangerous, and that he terrorized others or posed a credible threat to public safety while armed. *See id*. Meanwhile, Baxter argues that the Government cannot establish that Section 922(g)(3) is consistent with the historical tradition of firearm regulation in this country as applied to his specific conduct. His argument primarily rests upon the nexus required between his drug use and the conduct encompassed by the historical analogues. Although Baxter recognizes the historical analogues identified in *Veasley* and *Cooper*, he asserts that the Government must prove his marijuana use either induced mental illness or caused him to use a firearm in a terrorizing manner.

### a. Mentally Ill and Dangerous

Baxter contends that applying Section 922(g)(3) to his conduct fails to satisfy historical requirements because he did not suffer from a marijuana-induced mental illness. However, the standard established by the Eighth Circuit in *Veasley* and *Cooper* does not require that a defendant's drug use induce mental illness. Rather, the analogue's validity rests upon the behavioral overlap between the mentally ill and drug users. *Cooper*, 127 F.4th at 1095. When drug use induces those similar effects—causing users to behave like mentally ill and dangerous individuals who historically would have been denied the right to bear arms—Section 922(g)(3) is

consistent with the nation's history and tradition of firearm regulation.  *See id*. (quoting *Veasley,* 98 F.4th at 909).  The dispositive inquiry, therefore, is whether marijuana use made Baxter *act like* someone who is both mentally ill and dangerous.

Although the precise nexus required between a defendant's drug use and resulting behavior is unsettled, the evidence clearly establishes that Baxter's consistent and frequent marijuana use connected to conduct consistent with that of someone who is mentally ill and dangerous.  On this topic, the Government introduced the testimony of Dr. Marilyn Huestis.  Dr. Huestis is an expert specializing in pharmacology and toxicology.  [ECF No. 114-19].  She maintains a bachelor's degree in biochemistry, a master's degree in clinical chemistry, a Ph.D. in toxicology, and a *doctor honoris causa* in Medicine and Surgery.  She has 55 years of experience, including running a research program at the National Institute on Drug Abuse for decades.  Now retired, she operates her own consulting firm and currently teaches a course on cannabinoid pharmacology at Thomas Jefferson University.

The Court found Dr. Huestis to be credible, although it also acknowledges the limitation inherent in her testimony because she never evaluated Baxter individually.  However, a few general principles emerge from her testimony and expertise.  Although marijuana use does not necessarily produce the severe behavioral effects associated with substances like PCP, it is a controlled substance that affects users differently.  Dr. Huestis explained that marijuana interacts with brain receptors and impairs functions ranging from memory and body temperature regulation to executive function.  Ultimately, marijuana use can compromise a user's decision-making capacity.  Furthermore, regular marijuana use beginning at a young age can adversely affect both brain development and behavior.

The evidence establishes that Baxter used marijuana regularly— multiple times weekly if not daily—throughout his adolescence.  His own documentation demonstrates that marijuana use consistently coincided with gang activities and other dangerous behavior.  More importantly, Baxter had marijuana metabolites in his system on the night of his arrest.  Even assuming he was not actively impaired when officers discovered the firearm in his possession, his marijuana use clearly influenced his behavior that evening.  He was aggressive, combative, irrational, and hysterical in his interactions with both civilians and law enforcement.  Dr. Huestis testified that individuals may experience the cognitive effects of marijuana for up to 30 days following use and may begin experiencing withdrawal symptoms within several days of last use.  Further, individuals undergoing marijuana withdrawal commonly experience irritability, aggressiveness, and violent tendencies.  Dr. Huestis noted that this behavior is tied to the paranoia and panic attacks that marijuana users frequently experience, compounded by impaired reasoning and compromised executive function.

Given Baxter's chronic marijuana use, he was experiencing either the direct effects of marijuana or experiencing withdrawal at the time of his arrest.  Consequently, his status as an unlawful user directly impacted his behavior—conduct that mirrors that of a mentally ill and dangerous individual.  It is not essential that he was under the influence of an unlawful substance at the time for the statute to be constitutional as applied to his conduct.  Baxter actions— running around downtown Des Moines while attempting to fight with rival gang members, resisting arrest, and behaving belligerently toward officers—is precisely the type of dangerous behavior which would have been prohibited under historical analogue for the mentally ill.  *Veasley*, 98 F.4th at 913 (noting that mentally ill *and* dangerous individuals historically faced confinement or restraint and were denied access to firearms).

-17-

b. Induce Terror or Pose a Credible Threat

The Government also contends that Baxter terrorized and posed a credible threat to public safety while armed, rendering his disarmament consistent with this Nation's historical tradition of firearm regulation.  Baxter responds that the Government must demonstrate that his unlawful drug use directly induced his terrorizing conduct to be consistent with history and tradition. Specifically, he alleges that (1) his prior criminal conduct cannot be causally linked to marijuana use, (2) his social media documentation of firearms and drug use was never publicly distributed to terrorize others, and (3) his behavior the night of his arrest was neither terrorizing nor physically threatening.  The Court finds all evidence introduced by the Government at the dangerousness hearing relevant to determining whether Baxter terrorized others or posed credible threats while armed, though it accords particular weight to his conduct during the arrest.

First, Baxter's criminal history and past encounters with law enforcement document his pattern of violent behavior and firearm misuse coinciding with regular marijuana use.  Although these encounters may not definitively establish his impairment at each specific moment, the record indisputably shows that Baxter was regularly using marijuana throughout nearly all those incidents.  Given his status as a chronic unlawful user—whether actively impaired, experiencing marijuana's lingering effects, or undergoing withdrawal—his drug use inevitably influenced his conduct during this period. This history reveals that Baxter does not merely handle firearms irresponsibly by pointing them carelessly or brandishing them recklessly.  Rather, he uses them to terrorize and threaten others' physical safety, as evidenced by his shooting another student with a BB gun at school and possessing firearms used in actual shootings.

Second, Baxter mischaracterizes the evidence regarding his social media content presented at the post-trial hearing.  Snapchat is an app used primarily for sharing content, either by sending

it to other individuals directly or posting it so it is accessible to the general public or semi-public viewing by associates. Although it is true that every video or photo created with Snapchat does not necessarily have to be shared with others, such sharing is its primary purpose. Detective George explained how gang members utilize social media platforms like Snapchat to display gang affiliations and communicate with rival gangs. Although the Government did not provide complete metadata verifying which content was shared publicly, Detective George testified that Baxter had transmitted some Snapchat files to others, but he could not specify which files or recipients without examining the underlying data. Baxter's categorical assertion that he never shared any Snapchat content lacks evidentiary support. Rather, the record demonstrates that Baxter used this account to document gang-related conduct, often in a manner intended to threaten or boast about his firearms and drug possession. Moreover, even if Baxter's social media activity fails to demonstrate that he terrorized specific individuals, it provides compelling evidence linking his drug use, firearm possession, and gang activities.

Third, and most probative, Baxter's argument that his conduct the night he was arrested neither terrorized others nor created a credible threat is unconvincing. Baxter was accompanied by other gang members and twice engaged in an altercation with a rival gang during a busy Saturday night on Court Avenue. Although Baxter points out that he was attempting to hold back one of his associates when they were first confronted by police, body camera footage captures him arguing with the rival gang both before and after any peacemaking efforts. Twenty minutes later, the groups resumed fighting, with the witness describing them as "jumping on each other" and "hitting each other." The witness saw Baxter's involvement and detected behavior suggesting firearm possession.

Baxter maintains that absent overt weapon display or explicit threats to harm others, he cannot be found to have terrorized anyone. Even if he was not brandishing his firearm openly, he behaved threateningly by engaging in public altercations. Moreover, he signaled that he had a firearm in a manner sufficient to alarm an innocent bystander, who alerted police to the danger. The witness's account suggests that Baxter was attempting to intimidate rival gang members by indicating that he was carrying a gun. When officers approached, Baxter screamed profanity before fleeing. These circumstances reasonably support the conclusion that Baxter terrorized both rival gang members as well as the general public through his behavior while armed. More importantly, he absolutely presented a credible threat to the safety of others. That is precisely why a witness stopped officers and reported his concern, because he did not want anyone to get hurt. Baxter engaged in a sustained public confrontation while acting aggressively with other gang members and in possession of a loaded firearm. He threatened the physical safety of civilians, law enforcement, and his adversaries alike.[4]

Ultimately, Baxter bears no resemblance to the "frail and elderly grandmother" who uses marijuana "for a chronic medical condition" and "keeps a pistol tucked away for her own safety." *See Veasley*, 98 F.4th at 909. He is a gang member who habitually combines marijuana use with firearm possession and violent gang activity. The evidence demonstrates that he routinely endangered or terrorized others while armed. There is no doubt that he did so the night of his arrest. "When 'a court has found that the defendant represents a credible threat,' a ban on firearm possession 'fits neatly within the tradition.'" *Cooper*, 127 F.4th at 1096 (quoting *Rahimi*, 602 U.S.

---

[4] Baxter again argues that the Government cannot prove that his conduct the night he was arrested was induced by his marijuana use. However, for the reasons articulated in the analysis of the "mentally ill and dangerous" analogue, Baxter's regular marijuana use and overall status as an unlawful user demonstrates that his drug use consistently impacts his behavior. His terrorizing and threatening conduct that night is no exception.

at 698–99).   The same principle governs disarming drug users who participate in "terrifying conduct."   *Id*. (quoting *Veasley,* 98 F.4th at 917).   Baxter's conduct while using drugs and possessing firearms is nothing short of terrifying.   The Government has established that prohibiting the possession of firearms by Baxter as an unlawful user of a controlled substance is consistent with the historical tradition of firearm regulation.

### III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Indictment is DENIED. [ECF No. 106].

IT IS SO ORDERED.

Dated this 23rd day of July, 2025.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT